* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Taylor and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matter of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over this matter and an employer-employee relationship existed between the parties at all relevant times.
2. Key Risk Management Services managed defendant's self-insured fund.
3. Plaintiff suffered a compensable injury by accident on or about October 25, 2000.
4. Plaintiff's average weekly wage was $588.46, yielding a compensation rate of $392.32.
5. The issue before the Full Commission is whether sanctions, including attorney's fees, should be assessed for unreasonable defense as provided by N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff suffered a compensable injury by accident on or about October 25, 2000 when a light fixture fell and struck his right elbow. Plaintiff missed no time from work, choosing instead to enter a light duty program maintained by defendant. While there has been no formal acceptance of the claim memorialized by Industrial Commission forms, defendant acknowledged the compensability of the accident and the causal connection between the accident and the injury plaintiff suffered to his right arm.
2. Plaintiff's injury and treatment are not in dispute. Plaintiff's condition did not improve satisfactorily with conservative treatment and on February 19, 2002, plaintiff underwent elbow surgery performed by Dr. Donald K. Bynum, Jr. After a brief period of improvement, plaintiff developed complex regional pain syndrome, also known as reflex sympathetic dystrophy. Plaintiff's condition deteriorated and he continued to suffer extreme pain in his right arm. As a result of plaintiff's injury, plaintiff lost bone density in his right hand and his right hand is smaller than his left hand. Plaintiff also became depressed, lost weight and, as observed by the Deputy Commissioner, appeared emaciated. Plaintiff takes medications that impair mental function and cause side effects that require the use of other drugs. Plaintiff's condition has not improved appreciably.
3. Except for five days immediately after surgery during which he received payment of full wages for sick leave, plaintiff participated in and attended a light duty program maintained by defendant. Plaintiff's job title was "processing assistant." Plaintiff left the light duty program on or about September 18, 2002, after which defendant refused to pay compensation.
4. The "processing assistant" position fails to meet the test for actual, productive employment available in the competitive job market and is therefore not evidence that plaintiff had wage earning capacity during the time he attended the light duty program. Plaintiff was allowed to stay in the position while doing little or no real work, since his inability to use his right hand for writing or keyboarding made him unable to perform a clerical job. There were also irregularities in the position that were not usually present in defendant's jobs; for example, the position was not posted in accordance with defendant's usual procedure, plaintiff was offered the position despite the fact that he lacked the clerical experience the job description required, and the wages for all of the injured workers who filled positions like plaintiff's were based on their wages in their pre-injury jobs and were not rationally related to the light duty position. Plaintiff was not replaced after he left, indicating that the position was surplus and that an employer would not pay the job for in the competitive job market. Dr. Bynum, also an employee of defendant, testified that the light duty program as applied to plaintiff was for "administrative" and therapeutic purposes and was not productive work. Plaintiff spent the first several months in the program doing nothing at all.
5. Plaintiff left defendant's light duty program on September 18, 2002, because his pain and anxiety resulting from his compensable injury were so severe that he was unable to attend. Dr. Bynum and Dr. John E. Begovich, who treated plaintiff for pain control since October 17, 2002, were of the opinion that plaintiff has been unable to work in any productive employment since his departure from defendant. Dr. Bynum's suggestion that plaintiff return to one-handed activity with defendant in November of 2002 was intended to help plaintiff keep his job. Dr. Bynum also thought that the light duty position might be therapeutic, by distracting plaintiff so that he would not think so much about his pain.
6. Despite the testimony of both treating physicians that plaintiff is unable to work, plaintiff attempted to find work that would make use of his skills, while also allowing him to avoid using his right hand. Plaintiff has failed to obtain employment and most of the potential employers have refused to consider plaintiff because of his impaired condition. Plaintiff's attempt to find employment has been reasonable under the circumstances. Considering plaintiff's impaired condition caused by his injury, his prior work experience, which is limited to playing guitar and working with both hands as an electrician, his depression, and his overall unhealthy physical condition, any attempt to find work in the absence of substantial improvement to his condition is futile.
7. It is clear and undisputed that the light duty program in which plaintiff participated did not constitute real work that is available in the competitive job market. The evidence of disability, exhibited by the doctors' testimony, plaintiff's unsuccessful, reasonable job search and the obvious futility of plaintiff's attempts to find employment, is also clear and undisputed. No reasonable evaluation of the evidence can lead to any conclusion other than that plaintiff has been disabled and entitled to compensation for total disability since September 18, 2002. Most of the evidence has been readily available to defendant since plaintiff left work or shortly thereafter. Even if there remained some doubt, such doubt should have been erased by the testimony at the Deputy Commissioner's hearing and by the doctors' deposition testimony. There is no reasonable explanation as to why defendant continued to refuse to pay compensation. The defense of this matter has been unreasonable. Thus, the Full Commission finds that defendant has defended this matter without reasonable grounds, such that it is liable for sanctions under N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order to meet the burden of proving disability, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v. PerdueFarms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v. LowesProduct Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). When a plaintiff meets his burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demeryv. Perdue Farms, Inc., supra.
2. In the present case, plaintiff proved that he is unable to engage in productive employment, that he attempted a reasonable but unsuccessful job search, and that a further job search is futile. As a result, plaintiff has been totally disabled since September 18, 2002. Russell v. LowesProduct Distribution, supra. Plaintiff is entitled to total disability compensation at the rate of $392.32 per week beginning September 18, 2002 and continuing until further order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
3. The position plaintiff occupied in defendant's light duty program, from the time of his injury in October of 2000 until September 18, 2002, does not provide evidence of wage earning capacity because defendant has not proved that such a position is ordinarily available in the competitive job market. Therefore, plaintiff's ability to engage in that position and the circumstances of his departure from it have no bearing on this case. Saums v. Raleigh Community Hospital, 346 N.C. 760, 487 S.E.2d 746
(1997); Peoples v. Cone Mills Corp., 316 N.C. 426, 438, 342 S.E.2d 798, 806
(1986). In the absence of evidence of wage earning capacity, plaintiff may have proven total disability continuously since the time of the compensable accident. However, since plaintiff was paid wages in excess of his compensation rate for each week that he was in defendant's light duty program, total disability before September 18, 2002 would yield no compensation.
4. The evidence of plaintiff's disability is so overwhelming and uncontradicted that defendant's refusal to pay compensation for total disability since September 18, 2002, and particularly defendant's continued refusal to pay after the taking of the evidence before the Deputy Commissioner, constitutes an unreasonable defense entitling plaintiff to an award of sanctions, including attorney's fees. N.C. Gen. Stat. § 97-88.1. The proper measure of attorney's fees for the sanctions is the contingency fee that was incurred by plaintiff in litigation, which should not have been necessary to obtain benefits that were obviously due. Under the circumstances of this case, a reasonable fee is 25%.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay compensation for total disability at the rate of $392.32 per week beginning September 18, 2002 and continuing until further order of the Industrial Commission.
2. As a sanction for unreasonable defense, defendant shall pay plaintiff's attorney a reasonable attorney's fee at the rate of 25% of the compensation due, in addition to and not deducted from the compensation due plaintiff. That fee will be paid by paying an additional 25% of all past due benefits directly to plaintiff's attorney. Thereafter, every fourth week that plaintiff is paid ongoing compensation, defendant will make an additional payment in the amount of the weekly compensation, directly to plaintiff's attorney.
3. Defendant will pay the costs.
This 25th day of August 2005.
 S/ _________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/ _______________________ BERNADINE S. BALLANCE COMMISSIONER
DISSENTING IN PART:
 S/ _______________________ DIANNE C. SELLERS COMMISSIONER